**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 26-121-DLB**

**JEWENTI JEWENTI**                                                                   **PETITIONER**

**v.**                                       **MEMORANDUM ORDER**

**SAMUEL OLSON, et al.**                                                     **RESPONDENTS**

* * * * * * * * * * * * * * * *

This matter is before the Court on the Motion to Enforce Order (Doc. # 7) and Motion to Enforce Judgment and Order Immediate Release (Doc. # 10) by Petitioner Jewenti Jewenti.  On March 18, 2026, Jewenti filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. # 1).  In his Petition, Jewenti argued that he was being wrongly detained at the Campbell County Detention Center and requested that the Court order his immediate release or, alternatively, that he receive a bond hearing before an Immigration Judge ("IJ").

On April 15, 2026, this Court granted Jewenti's Petition, ordering Respondents to immediately release Petitioner or, in the alternative, provide him with a bond hearing pursuant to 8 U.S.C. § 1226(a).  (Doc. # 5 at 18).  On April 29, 2026, Respondents filed a Status Report notifying the Court that a bond hearing was held on April 20, 2026, but was continued ten days in response to Petitioner's motion for continuance.  (Doc. # 6).  A day later, Petitioner Jewenti filed his first Motion to Enforce, primarily asking the Court to clarify its position on which party has the burden of proof in an immigration bond hearing. (Doc. # 7 at 3).  That same day, the Court issued an Order restating that Jewenti was

1

entitled to a bond hearing where Respondents bear the burden of proof by clear and convincing evidence that Jewenti is a danger to society or a flight risk.  (Doc. # 9).  Per the Court's Order, Jewenti received his second bond hearing on May 4, 2026 before IJ Kelly Johnson, where the IJ found that Respondents met their burden of proof and denied Jewenti bond.  (Doc. # 10-2).

On May 13, 2026, Jewenti filed his second Motion to Enforce, arguing that the government again failed to provide a constitutionally adequate bond hearing in violation of the Court's order.  (Doc. # 10 at 1).  Specifically, Jewenti claims that his bond hearing was unconstitutional because the IJ again placed the burden of proof on him, as opposed to the government.  (*Id*.; *see also* Doc. # 10-1).  Accordingly, he asks that this Court "enforce its decisions and order the Petitioner's immediate release."  (Doc. # 10 at 1).

Jewenti's Motion is substantively scant.  Indeed, the Motion refers almost wholly to an affidavit from Nareshwar Virdi, Jewenti's counsel who represented him at the bond hearing before the IJ.  (*Id*.).  Virdi's affidavit claims that the hearing was not constitutionally adequate because Jewenti testified at the hearing, which he claims caused "the full weight of enquiry [to be] unconstitutionally levied on Jewenti."  (Doc. # 10-1 ¶ 6(iii)).  Further, he claimed that the IJ "allowed DHS to make factual enquiry into Jewenti's asylum claim and its factual basis."  (*Id*. ¶ 7).

The Court is not convinced by Jewenti's arguments.  This Court has repeatedly held—in this case, no less—that in a custody redetermination hearing, the government bears the burden of proof by clear and convincing evidence.  *See* Order at 1, *Jewenti v. Olson*, No. 26-cv-121-DLB (E.D. Ky. Apr. 30, 2026) ("Under a plain reading of the Court's Order . . . Petitioner [] is entitled to a constitutionally adequate bond hearing in which **the**

**government bears the burden of proving Petitioner is either a danger to the community or a flight risk by clear and convincing evidence**.") (emphasis in original); *Id*. ("Indeed, this Court's interpretation of the burden of proof is well established in district courts and circuits across the country.")  Order at 9, *Penott Rodriquez v. Fields*, No. 2:26-cv-117-DLB (E.D. Ky. May 5, 2026) ("This Court once again reiterates that the government bears the burden in a custody redetermination hearing.").  However, in those circumstances, the Court granted the petitioner's motion to enforce after a review of the record clearly showed that the IJ explicitly declined to make a finding regarding which party bore the burden of proof.

Here, by contrast, IJ Johnson clearly states—orally at the hearing and in his written Order—that Respondents bore the burden of proof.  (*See* Docs. # 10-2 at 2–3; # 10-1 ¶ 4).  DHS then proceeded to offer evidence in the form of Jewenti's testimony and proffered documentary evidence.  (Doc. # 10-2 at 1–2).  DHS elicited testimony from Jewenti about his living situation, occupational history, criminal history, and immigration circumstances.  (*Id*.).  This is not a case where DHS put forward no evidence whatsoever upon which the IJ could rely.  Crucially, in determining whether IJ Johnson could *possibly* conclude from the evidence before him that Jewenti posed a flight risk, the Court must scrupulously avoid passing judgment on his discretionary weighing of that evidence.  *See* 8 U.S.C. § 1226(e).

Likewise, Jewenti fails to show that IJ Johnson's Order, on its face, demonstrates that he failed to apply the correct burden to the facts at issue.  Rather, IJ Johnson's Order states just the opposite—that he placed the burden on the government.  (Doc. # 10-3 at 1–2).  As discussed above, the government proceeded to present evidence in the form of

3

examination of and argument against Jewenti's proffered evidence and testimony. After evaluating this evidence, IJ Johnson deemed it sufficient to conclude by clear and convincing evidence that Jewenti posed a flight risk. (*Id.* at 2–3). The Court cannot conclude from the face of IJ Johnson's Order that he applied the wrong standard.

Jewenti also posits he faced real and inherent bias in his proceedings. (Doc. # 7 at 3). Jewenti cites the bond denial rates from the Memphis Immigration Court which he claims "coincides with the shift in policy of the present government." (*Id*. at 2). Particularly, he notes that IJ Johnson has a bond denial rate of greater than ninety-seven percent across 2025 and 2026, which he claims is disproportionate. (*Id*.). And given the "policies and interests of the government" to "detain as many noncitizens as possible in order to detain as many noncitizens as possible," Jewenti maintains that "risk of bias" is "farther away from what the due process intended it to be." (*Id*. at 3).

Based on the record, Jewenti has failed to establish that IJ Johnson was not a neutral decisionmaker. The mere fact that IJ Johnson has a high bond-denial rate cannot establish that he lacks neutrality. Even accepting that he denies bond at a higher rate than most IJs, the Court is unable to conclude that these denials resulted from a bias against petitioners, rather than the facts at play in each case. Similarly, the fact that DHS could have more clearly articulated its flight risk theory does not preclude IJ Johnson's conclusion that the evidence DHS presented established that Jewenti posed a flight risk. Indeed, DHS examined and made arguments based on Jewenti's testimony and submitted evidence. (*See* Doc. # 10-1 ¶ 7). And IJ Johnson considered this evidence in reaching his conclusion. (*See* Doc. # 10-2 at 1–3). Finally, the Court disagrees that

administrative pressures within the Department of Justice have vitiated IJs' ability to adjudicate bond determination hearings in a neutral manner.

Accordingly, for the reasons set forth herein, **IT IS ORDERED** as follows:

(1)     Petitioner's Motion to Enforce Order (Doc. # 7) and Motion to Enforce and Order Immediate Release (Doc. # 10) are **DENIED**; and

(2)     This matter is hereby **DISMISSED** and **STRICKEN** from the Court's active docket.

This 28th day of May, 2026.

Signed By:

David L. Bunning

Chief United States District Judge

G:Judge-DLB\DATA\ORDERS\Cov2026\26-121 Order denying motion to enforce.docx